IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

JAMES RODMAN,                    No. 6:15-cv-00511-HZ

          Plaintiff,

     v.

CAROLYN W. COLVIN, Acting        OPINION & ORDER
Commissioner of Social Security,

         Defendant.

Philip Studenberg
230 Main Street
Klamath Falls, Oregon 97601

Howard Olinksy
OLINSKY LAW GROUP
One Park Place
300 South State Street, Suite 420
Syracuse, New York 13202

     Attorneys for Plaintiff

/ / /

1 - OPINION & ORDER

Billy J. Williams
ACTING UNITED STATES ATTORNEY
Janice E. Hebert
ASSISTANT UNITED STATES ATTORNEY
100 S.W. Third Avenue, Suite 600
Portland, Oregon 97201-2902

Alexis L. Toma
SPECIAL ASSISTANT UNITED STATES ATTORNEY
Office of the General Counsel
Social Security Administration
701 Fifth Avenue, Suite 2900, M/S 221A
Seattle, Washington 98104-7075

      Attorneys for Defendant

HERNANDEZ, District Judge:

      Plaintiff James Rodman brings this action seeking judicial review of the Commissioner's

final decision to deny disability insurance benefits (DIB) and supplemental security income

(SSI). This Court has jurisdiction pursuant to 42 U.S.C. § 405(g) (incorporated by 42 U.S.C. §

1383(c)(3)). I affirm the Commissioner's decision.

## PROCEDURAL BACKGROUND

      Plaintiff applied for DIB and SSI on May 18, 2012, alleging an onset date of December

31, 2009. Tr. 209-10, 211-23; see also Tr. 38 (hearing testimony regarding alleged onset date).

His applications were denied initially and on reconsideration. Tr. 94-103, 104, 106, 139-42

(initial DIB); Tr. 84-93, 105, 143-46 (initial SSI); Tr. 107, 120-30, 131-32, 148-50

(reconsideration DIB); Tr. 108, 109-19, 151-52 (reconsideration SSI).

      On October 30, 2013, Plaintiff appeared, with counsel, for a hearing before an

Administrative Law Judge (ALJ). Tr. 34-74. On November 20, 2013, the ALJ found Plaintiff

not disabled. Tr. 13-33. The Appeals Council denied review. Tr. 1-6.

2 - OPINION & ORDER

FACTUAL BACKGROUND

Plaintiff alleges disability based on having back pain, "crushed/broken back," and carpal tunnel syndrome.  Tr. 365, 378.  At the time of the hearing, he was fifty-three years old.  Tr. 39. He has a tenth-grade education and has past relevant work experience as a mill worker, concrete construction worker, road construction worker, and in running his own construction business. Tr. 26, 41.

.                                    SEQUENTIAL DISABILITY EVALUATION

A claimant is disabled if unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months[.]"  42 U.S.C. §§ 423(d)(1)(A), 1382c(3)(a).

Disability claims are evaluated according to a five-step procedure.  See Valentine v. Comm'r, 574 F.3d 685, 689 (9th Cir. 2009) (in social security cases, agency uses five-step procedure to determine disability).   The claimant bears the ultimate burden of proving disability. Id.

In the first step, the Commissioner determines whether a claimant is engaged in "substantial gainful activity."  If so, the claimant is not disabled.  Bowen v. Yuckert, 482 U.S. 137, 140 (1987); 20 C.F.R. §§ 404.1520(b), 416.920(b).  In step two, the Commissioner determines whether the claimant has a "medically severe impairment or combination of impairments."  Yuckert, 482 U.S. at 140-41; 20 C.F.R. §§ 404.1520(c), 416.920(c).  If not, the claimant is not disabled.

In step three, the Commissioner determines whether plaintiff's impairments, singly or in

3 - OPINION & ORDER

combination, meet or equal "one of a number of listed impairments that the [Commissioner] acknowledges are so severe as to preclude substantial gainful activity." Yuckert, 482 U.S. at 141; 20 C.F.R. §§ 404.1520(d), 416.920(d). If so, the claimant is conclusively presumed disabled; if not, the Commissioner proceeds to step four. Yuckert, 482 U.S. at 141.

In step four, the Commissioner determines whether the claimant, despite any impairment(s), has the residual functional capacity (RFC) to perform "past relevant work." 20 C.F.R. §§ 404.1520(e), 416.920(e). If the claimant can, the claimant is not disabled. If the claimant cannot perform past relevant work, the burden shifts to the Commissioner. In step five, the Commissioner must establish that the claimant can perform other work. Yuckert, 482 U.S. at 141-42; 20 C.F.R. §§ 404.1520(e) & (f), 416.920(e) & (f). If the Commissioner meets his burden and proves that the claimant is able to perform other work which exists in the national economy, the claimant is not disabled. 20 C.F.R. §§ 404.1566, 416.966.

THE ALJ'S DECISION

At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since his alleged onset date. Tr. 18. Next, at steps two and three, the ALJ determined that Plaintiff has severe impairments of lumbar degenerative disc disease, obesity, and gout, but that the impairments did not meet or equal, either singly or in combination, a listed impairment. Tr. 18-20.

At step four, the ALJ concluded that Plaintiff has the residual functional capacity (RFC) to perform light work as defined in 20 C.F.R. §§ 404.1567(b), 416.967(b), with the following limitations: (1) the need to alternate positions every 45 minutes; (2) the ability to climb, bend, and crawl occasionally; (3) the ability to balance, kneel, and crouch frequently; (4) the need to

avoid concentrated exposure to vibrations and workplace hazards; and (5) the likelihood he will

be off-task up to 15% of the workday.  Tr. 20.  With this RFC, the ALJ determined that Plaintiff

is unable to perform any of his past relevant work.  Tr. 26.  However, at step five, the ALJ

determined that Plaintiff is able to perform jobs that exist in significant numbers in the economy

such as office helper and mail clerk.  Tr. 27-28.  Thus, the ALJ determined that Plaintiff is not

disabled.  Tr. 28.

## STANDARD OF REVIEW

A court may set aside the Commissioner's denial of benefits only when the

Commissioner's findings are based on legal error or are not supported by substantial evidence in

the record as a whole.  Vasquez v. Astrue, 572 F.3d 586, 591 (9th Cir. 2009).  "Substantial

evidence means more than a mere scintilla but less than a preponderance; it is such relevant

evidence as a reasonable mind might accept as adequate to support a conclusion."  Id. (internal

quotation marks omitted).  The court considers the record as a whole, including both the

evidence that supports and detracts from the Commissioner's decision.  Id.; Lingenfelter v.

Astrue, 504 F.3d 1028, 1035 (9th Cir. 2007).  "Where the evidence is susceptible to more than

one rational interpretation, the ALJ's decision must be affirmed."  Vasquez, 572 F.3d at 591

(internal quotation marks and brackets omitted); see also Massachi v. Astrue, 486 F.3d 1149,

1152 (9th Cir. 2007) ("Where the evidence as a whole can support either a grant or a denial, [the

court] may not substitute [its] judgment for the ALJ's") (internal quotation marks omitted).

## DISCUSSION

Plaintiff argues that the ALJ erred by finding his subjective limitations allegations not

credible and by rejecting the functional limitations rendered by his pain specialist.  As a result, he

5 - OPINION & ORDER

contends that the ALJ presented an invalid RFC to the vocational expert (VE).

I.  Credibility Determination

The ALJ is responsible for determining credibility.  <u>Vasquez</u>, 572 F.3d at 591.  Once a claimant shows an underlying impairment and a causal relationship between the impairment and some level of symptoms, clear and convincing reasons are needed to reject a claimant's testimony if there is no evidence of malingering.  <u>Carmickle v. Comm'r</u>, 533 F.3d 1155, 1160 (9th Cir. 2008) (absent affirmative evidence that the plaintiff is malingering, "where the record includes objective medical evidence establishing that the claimant suffers from an impairment that could reasonably produce the symptoms of which he complains, an adverse credibility finding must be based on 'clear and convincing reasons'"); <u>see also</u> <u>Molina v. Astrue</u>, 674 F.3d 1104, 1112 (9th Cir. 2012) (ALJ engages in two-step analysis to determine credibility:  First, the ALJ determines whether there is "objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged"; and second, if the claimant has presented such evidence, and there is no evidence of malingering, then the ALJ must give "specific, clear and convincing reasons in order to reject the claimant's testimony about the severity of the symptoms.") (internal quotation marks omitted).

When determining the credibility of a plaintiff's complaints of pain or other limitations, the ALJ may properly consider several factors, including the plaintiff's daily activities, inconsistencies in testimony, effectiveness or adverse side effects of any pain medication, and relevant character evidence.  <u>Orteza v. Shalala</u>, 50 F.3d 748, 750 (9th Cir. 1995).  The ALJ may also consider the ability to perform household chores, the lack of any side effects from prescribed medications, and the unexplained absence of treatment for excessive pain.  <u>Id.</u>; <u>see also</u>

Tommasetti v. Astrue, 533 F.3d 1035, 1039 (9th Cir. 2008) ("The ALJ may consider many factors in weighing a claimant's credibility, including (1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the claimant's daily activities.") (internal quotation marks omitted).

As the Ninth Circuit explained in Molina;

> In evaluating the claimant's testimony, the ALJ may use ordinary techniques of credibility evaluation.  For instance, the ALJ may consider inconsistencies either in the claimant's testimony or between the testimony and the claimant's conduct, unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment, and whether the claimant engages in daily activities inconsistent with the alleged symptoms[.]  While a claimant need not vegetate in a dark room in order to be eligible for benefits, the ALJ may discredit a claimant's testimony when the claimant reports participation in everyday activities indicating capacities that are transferable to a work setting[.]  Even where those activities suggest some difficulty functioning, they may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment.

Molina, 674 F.3d at 1112-13 (citations and internal quotation marks omitted).

The ALJ gave several reasons for finding Plaintiff's subjective testimony not credible. First, the ALJ discussed evidence of Plaintiff's diversion, overuse, or abuse of his narcotic medications.  Tr. 24 (noting that these problems detracted from Plaintiff's overall credibility and indicating they could "signify non-compliance with treatment and/or drug-seeking behaviors").  Next, the ALJ noted Plaintiff's inconsistent presentation to medical practitioners, including two positive Waddell's signs[1] during his consultative examination.  Id.

---

[1]  "'Waddell's signs' are a group of physical signs that may indicate a nonorganic or psychological component to low back pain."  Alagoz v. Colvin, No. 6:12-cv-00902-RE, 2013

Third, the ALJ found Plaintiff's activities of daily living to be inconsistent with his stated limitations. Id. Fourth, the ALJ found that Plaintiff had "somewhat" failed to follow treatment. Id. Next, the ALJ noted that Plaintiff was a poor historian, including "significant variances in his work history reporting." Id. Finally, the ALJ found that Plaintiff asserted complaints in support of his claim for which the records revealed he had not pursued treatment. Id.

A. Drug Use/Abuse Issues

The ALJ stated that

> [d]uring the adjudicatory period, more than one treating provider expressed concern that the claimant was diverting his narcotic prescriptions, overusing his medications, and/or abusing his medications. The claimant had abnormal findings on multiple drug screens, which formed the basis for the concerns. The claimant admitted to taking medications prescribed to someone other than him. These problems detract from the claimant's overall credibility because they could signify non-compliance with treatment and/or drug-seeking behaviors.

Tr. 24.

Plaintiff does not take issue with the ALJ's recitation of the evidence in the record. Pl.'s Mem. 14 ("the ALJ's statement is true in that the urine drug screens suggest he was not taking his oxycodone and his physicians noted possible drug seeking behavior[.]"). And, as the ALJ noted in her decision, the drug-related evidence is well-supported in the record. Tr. 21, 22, 23, 24. Plaintiff argues, however, that the ALJ did not sufficiently explain why drug addiction would "automatically mean his credibility is eroded." Id. Plaintiff suggests that "[d]rug-seeking behavior or non-compliance does not necessarily prove [Plaintiff] lied about the severity of his

―――――――――――――――

WL 3043657, at *6 (D. Or. June 17, 2013) (citing Gordon Waddell, John McCulloch, Ed Kummel & Robert Venner, Nonorganic Physical Signs in Low–Back Pain, Spine 5(2), 117–125 (March/April 1980)).

symptoms." Id.

An ALJ may discount a claimant's testimony when the claimant appears to have exaggerated complaints in order to receive medication to satisfy an addiction. See Edlund v. Massanari, 253 F.3d 1152, 1157 (9th Cir. 2001) (ALJ properly concluded that the claimant's complaints were not credible or supported by substantial evidence when there was evidence the plaintiff "was exaggerating his complaints of physical pain in order to receive prescription pain medication to feed his Valium addiction"). Similarly, when the evidence shows that a claimant has "diverted" his prescription pain medication, it is reasonable to infer that the condition for which the claimant is being prescribed the medication is not serious enough for the claimant to actually need the medication.

Additionally, the law is well-established that a claimant's allegations may be discredited based on "relevant character evidence" if the findings are supported in the record. Bunnell v. Sullivan, 947 F.2d 341, 346 (9th Cir. 1991) (en banc). Here, the issue was not Plaintiff's "drug addiction" per se but a record of dishonest and manipulative behavior regarding Plaintiff's narcotic medication use which the ALJ reasonably interpreted as suggesting that Plaintiff was less than candid in reporting his pain symptoms. The ALJ's interpretation, based on undisputed evidence in the record, was rational. E.g., Calder v. Colvin, No. 6:12-cv-01943-AA, 2014 WL 793074, at *4 (D. Or. Feb. 23, 2014) ("The ALJ may consider drug-seeking behavior while evaluating the claimant's credibility").

B. Inconsistent Presentation

The ALJ explained that the Plaintiff "presented in inconsistent fashion during the period at issue." As examples, the ALJ noted Plaintiff's inconsistent report of gait difficulties and that

he had two positive Waddell's signs during his consultative exam.  Tr. 24.  Plaintiff argues that

the fact that he had gait impairment on some examinations and not others is not evidence of

exaggeration of symptoms or inconsistent reporting.  He contends that such inconsistency "could

be related to any number of factors, such as when [Plaintiff] took his pain medication that day or

whether it was a 'good day' or a 'bad day' in relation to his pain level."  Pl.'s Mem. 15.

Again, Plaintiff does not contest that the ALJ's recitation of the evidence in the record is

incorrect.  Instead, he argues that the ALJ's interpretation was unreasonable because it is not the

only interpretation.  But, the fact that there may be other interpretations does not make the ALJ's

interpretation unreasonable.  See Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001)

(recognizing that the "ALJ's interpretation of [the plaintiff's] testimony may not be the only

reasonable one," but affirming ALJ because ALJ's interpretation was reasonable and supported

by substantial evidence and it is not the court's role to "second-guess").

As for the positive Waddell's signs, Plaintiff notes that examining physician Dr. Todd J.

Lewis, M.D., opined that the physical findings regarding Plaintiff's lumbar spine were valid,

despite the presence of mild "cogwheeling" and a positive distracted leg raise.  Tr. 503-06.  Thus,

Plaintiff argues that it was error to rely on the positive Waddell's signs to find Plaintiff not

credible.  The report from Dr. Lewis shows that although he found Plaintiff's lumbar spine

findings valid, he nonetheless found Plaintiff's complaints related to his hip invalid because of

Plaintiff's self-limitation.  Tr. 506.  It was not irrational for the ALJ to discount Plaintiff's

subjective reports based on the self-limiting behavior noted by the consultative examiner.

C.  Activities

The ALJ found that Plaintiff's "reported activities strongly suggest he has a greater

capacity for work-related activities than he seems to believe." Tr. 24.  As examples, the ALJ

noted that Plaintiff continued to work in jobs requiring more exertion that the back surgeon had

advised because he felt strong enough to do so.  Id.  He also noted that Plaintiff reported that he

enjoyed fishing with his grandson regularly.  Id.

      Plaintiff, once again, does not dispute the ALJ's factual determination that he continued to

work in physically demanding jobs after he had back surgery.  He argues, however, that this work

activity does not detract from his credibility.  In support, he cites to 2009 medical records by Dr.

Alan Blake, M.D., in which Dr. Blake noted that although Plaintiff had been able to return to

work after his surgery, he still suffered from chronic pain which was worsening, making it

difficult for him to work.  Tr. 415.  In another record, Plaintiff reported to Dr. Blake that his

current tree surgeon work was causing his back to hurt more.  Tr. 445.  Plaintiff acknowledges

that the evidence shows he returned to physically demanding work after his 2004 surgery, but he

notes that the evidence also shows he experienced difficulty in performing that work.  Thus, his

post-2004 work is not inconsistent with his allegations of disability beginning December 31,

2009.

      While a claimant should not necessarily be criticized for attempting to work despite a

disabling condition, Carlson v. Astrue, 682 F. Supp. 2d 1156, 1167 (D. Or. 2009) (citing

Lingenfelter v. Astrue, 504 F.3d 1028, 1038 (9th Cir. 2007)), the record shows that Plaintiff

continued to engage in physically demanding work after his alleged onset date.  See Tr. 426

(September 2011 report to Dr. Blake that he did not want to stop medication because he was

trying to work through the rest of the summer and early fall); Tr. 422 (November 2011 report to

Dr. Blake that he used medication on "days that he has to do a lot of cutting").  These reports

undermine Plaintiff's argument that his ability to engage in physically demanding work ended

before his alleged onset date. And here, it is not just that Plaintiff continued to work, but that he

continued to work in physically demanding jobs that are inconsistent with his stated allegations.

Thus, the ALJ's interpretation of the evidence was not unreasonable.

Plaintiff further argues that the ALJ's interpretation of his daily activities mischaracterizes

the record. He notes that in his Adult Function Report, he stated that he watched television,

fished, and played with his grandson "a couple of times a week." Tr. 356. He argues that his

statement is unclear regarding which of those activities he actually engages in with what

frequency and it is not a fair reading of the record to conclude that he fishes "regularly." He also

points to his wife's Third Party Function Report in which she indicated that "his outdoor

activities are very limited and not often." Tr. 340.

Notably, that same Third Party Function Report stated that Plaintiff's hobbies and

interests included camping, fishing, watching television, socializing, and playing with dogs. Id.

In response to a question asking how these activities have changed since the injuries or

conditions began, Plaintiff's wife stated that he no longer hunted or hiked on trails, and that he

does not "salt water" fish. Id. Based on Plaintiff's report that "a couple of times a week" he

watched television, fished, and played with his grandson and his wife's report that his hobbies

still included fishing generally just not "salt water" fishing, it was not unreasonable for the ALJ

to cite to Plaintiff's "regular" fishing as an activity inconsistent with his subjective testimony.

D. Failure to Follow Treatment

Next, the ALJ found that Plaintiff had failed to follow prescribed treatment "somewhat,"

and cited as an example his failure to increase exercise, lose weight, and avoid excessive

vibration experienced when riding a motorcycle.  Plaintiff argues that the ALJ failed to cite to a

specific treatment prescription and thus, this reason is not supported by the record.  Plaintiff

points to Social Security Ruling (SSR) 02-01p addressing the evaluation of obesity and stating

that a "treating source's statement that an individual 'should' lose weight or has 'been advised' to

get more exercise is not prescribed treatment."  SSR 02-01p, available at 2002 WL 34686281, at

*9.

  In a February 2012 office visit, Dr. Blake noted that Plaintiff had hurt his back the prior

month "moving heavy objects."  Tr. 418.  After noting concerns regarding Plaintiff's narcotics

use and drug screens, as well as his twenty-five pound weight gain over two years, Dr. Blake

wrote that he would no longer give Plaintiff a narcotics prescription and that Plaintiff needed to

lose weight and exercise and "his back will be ok."  Tr. 418-19.  A few months later, Dr. Lewis,

under the heading "Treatment Plan," noted that he had given Plaintiff a "good self-directed home

exercise program[.]" Tr. 477; see also Tr. 516 (April 2013 chart note by Dr. Patrick Rask, M.D.,

noting, under the section for "Plan," that Plaintiff was to continue with a home exercise

program).  Based on these medical records, Defendant argues that these are directives, not

recommendations, and thus, the ALJ was justified in basing her credibility determination on

Plaintiff's failure to follow prescribed treatment.

  SSR 02-01p addresses obesity.  The instructions for Plaintiff to lose weight and exercise

were addressed to his continuing complaints of back pain.  Thus, the SSR does not directly apply.

However, while I agree with Defendant that the physicians' reports suggest that the instruction to

lose weight and exercise more appear to be more of a directive than just a recommendation,

especially Dr. Blake's chart note instructing Plaintiff to lose weight and exercise more instead of

continuing with a narcotic prescription, I need not conclude definitively whether these instructions were "recommendations" or "prescribed treatment" because even if the ALJ erred in relying on them, she provided several other reasons, supported in the record, for finding Plaintiff not credible.

E.  Poor Historian/Variances in Work History Reporting

The ALJ found Plaintiff not entirely credible because he was a poor historian, noting the significant variances in his work history reporting.  Tr. 24.  Plaintiff argues that because the ALJ failed to elaborate on these variances or whether they related to his alleged period of disability, it is impossible to determine if this reason is supported by substantial evidence.

Plaintiff's argument overlooks that two pages after making her finding, the ALJ discussed Plaintiff's work history in more detail.  She noted that (1) he reported working for thirteen years in the mills until 2004 and then went without work from 2004 to 2007 and then worked for multiple employers as a supervisor on concrete jobs; (2) but in other reporting, he stated that he had owned his own construction business from 1993 to 2002, then worked as a general laborer in road construction from 2002 to April 2004, and then as a foreman from 2007 to 2008; and (3) he also separately reported that he worked as a laborer from 2002 to 2008 and then as a foreman from 2008 to the alleged onset date.  Tr. 26.

The ALJ supported her decision with citations to the record which show that Plaintiff's work history reports were indeed inconsistent.  The ALJ did not err in relying on this evidence in her credibility determination.

F.  Complaints not Pursued with Medical Practitioners

Finally, the ALJ noted that the record lacked evidence of Plaintiff raising certain

"complaints" with his medical providers which he asserted supported his disability claim. Tr. 24. The ALJ gave as an example that she found no significant mention of depression by Plaintiff to his providers yet Plaintiff alleged that this impairment caused significant limitations in his day-to-day life. Id.

Plaintiff argues that the ALJ's finding is not supported by the record because treatment notes show one instance when he reported depression and received prescription medication. He also argues that the record shows other mental impairments, namely anxiety, for which he was prescribed medication. And, in any event, he argues that while he asserts he has mental impairments, it is clear that he was not asserting that they were "major" compared to his physical symptoms.

The treatment notes do not support Plaintiff's argument. One record is an Adult Disability Report completed by Plaintiff as part of his disability application, in which he states that he was taking Sertraline for depression as prescribed by the Sweet Home Family Clinic. Tr. 332. But, this is not a treatment provider's record of a complaint by Plaintiff of depression or depressive symptoms. And Plaintiff points to no treatment records from the Sweet Home Family Clinic to support his report. In fact, records from that clinic indicate that the Sertraline was prescribed for anxiety or panic disorder, not depression. Tr. 443.

The other record is a treatment record of a visit to Dr. Rask in which Plaintiff's chief complaints are low back pain radiating to his hips and muscular strain and spasms in his upper back and shoulders. Tr. 474-76. There, under a "Review of Symptoms," Dr. Rask notes that Plaintiff described "some palpitations, constipation, diarrhea, heartburn, muscle spasm, anxiety, depression, night sweats, [and] difficulty with sleep." Tr. 475. The record does not reveal that

15 - OPINION & ORDER

he was taking any anti-depressant medication at that time, nor did Dr. Rask further discuss the condition with Plaintiff.

The records are not inconsistent with the ALJ's determination that there was no "significant" mention of depression by Plaintiff to his providers. As such, it was not unreasonable for the ALJ to find that this undermined Plaintiff's credibility in reporting subjective symptoms.

In sum, the ALJ provided several specific and clear and convincing reasons to find Plaintiff not credible. The ALJ's credibility determination was not in error.

II. Dr. Rask's Opinion

In April 2012, Plaintiff was first seen by Dr. Patrick Rask, M.D., a pain specialist with Corvallis Pain and Spine. Tr. 474-75. At that time, Dr. Rask performed a physical examination and noted the following: on palpation, Plaintiff was quite tender in the bilateral SJ joint region, right worse than left; Plaintiff had positive provocative maneuvers such as Yeoman's maneuver and Patrick's test; Plaintiff exhibited a "quite antalgic" gait on the right lower extremity; Plaintiff had hyporeflexive reflexes on the right patella; he was able to walk but limped on the right leg; and Plaintiff was unable to stand on the toes of his right lower extremity. Tr. 475.

Dr. Rask assessed Plaintiff as having lumbar postlaminectomy syndrome and sacroilitis. Id. He planned to try SI joint injections and/or epidural steroid injections. Id. Dr. Rask presented Plaintiff with an opiod agreement which Plaintiff signed, with a planned follow-up in two weeks. Tr. 476.

The next chart note by Dr. Rask is not dated until seven months later, in November 2012. Tr. 519. There, Dr. Rask noted that Plaintiff did very well with bilateral SI joint injections, with

16 - OPINION & ORDER

almost 100% pain relief lasting for several months.  Tr. 519.  Dr. Rask had planned to perform

facet joint injections but Plaintiff's insurance no longer covered the injections.  Id.  Dr. Rask

commented that Plaintiff was doing well on the methadone dose which he used along with

oxycodone.  Id.  Although he conducted another physical examination, the only notable

observation was a "somewhat antalgic gait."  Id.

        In January 2013, Plaintiff was seen by Physician's Assistant (PA) Chris Crum instead of

Dr. Rask.  Tr. 518.  PA Crum noted that Plaintiff's medications was providing pain relief.  Id.  On

physical examination, the only relevant observation was a "somewhat antalgic gait."  Id.  PA

Crum saw Plaintiff again in March 2013.  Tr. 517.  Plaintiff expressed a desire to increase his

midday dose of methadone.  Id.  Crum denied the request.  Id.  As with the previous visit, the

only relevant observation or finding on physical examination was a "somewhat antalgic gait."  Id.

        Dr. Rask saw Plaintiff in April 2013.  Tr. 516.  At that time, Plaintiff reported he

continued to have pain but he felt he was doing "fairly well" on the current methadone and

oxycodone prescriptions.  Id.  As with the previous, recent physical examinations, Dr. Rask noted

Plaintiff's continued antalgic gait.  Id.  He also remarked that Plaintiff's "axial lumbar pain" was

"worse with flexion extension rotation either side."  Id.  Dr. Rask denied Plaintiff's request for an

increase of oxycodone to help him sleep and encouraged Plaintiff to pursue something other than

narcotics to assist him with sleep.  Id.

        The last visit in the record that Plaintiff had with Dr. Rask was in June 2013.  Tr. 515.

On physical examination, Dr. Rask noted Plaintiff's antalgic gait and tenderness in the bilateral

SI joint region.  Id.  The record shows that Dr. Rask had a "frank discussion" with Plaintiff and

with Plaintiff's wife who was present, regarding Plaintiff's narcotic use.  Id.  Because of his

17 - OPINION & ORDER

concerns, Dr. Rask intended to bring Plaintiff back in two weeks for a "random pill count" which Plaintiff was subject to as a part of his opiate agreement with Dr. Rask.  Id.  There are no additional records showing treatment by Dr. Rask.

In August 2013, Dr. Rask completed a RFC Questionnaire regarding Plaintiff's physical capabilities.  Tr. 568-69.  There, he opined that Plaintiff's symptoms were associated with impairments severe enough to frequently interfere with the attention and concentration needed to perform simple work-related tasks.  Tr. 568.  He stated that during an eight-hour workday, Plaintiff would need to recline or lie down more than the typical fifteen minute morning and afternoon breaks and the typical thirty to sixty minute lunch.  Id.  He assessed Plaintiff as having the ability to walk two to three blocks before needing to rest, and as having the abilities (1) to sit for thirty minutes and stand/walk for twenty minutes at one time; (2) to sit for two to three hours and stand/walk for two to three hours total in an eight-hour day; (3) to frequently lift less than ten pounds; to occasionally lift ten pounds; (4) to never lift twenty or fifty pounds; (5) to use his hands to grasp, turn, and twist objects twenty-five percent of an eight-hour workday; (6) to use his fingers for fine manipulation twenty-five percent of an eight-hour workday; and (7) to use his arms to reach fifteen percent of an eight-hour workday.  Tr. 568-69.

Additionally, Dr. Rask opined that Plaintiff would need to take an unscheduled twenty to thirty minute break, every forty-five to sixty minutes of an eight-hour workday; that he would miss work more than four times per month as a result of his impairments; and that Plaintiff was physically incapable of working an eight-hour day, five days per week on a sustained basis.  Id.  He stated that Plaintiff was not a malingerer and that Plaintiff's impairments were reasonably consistent with the symptoms and functional limitations assessed in the evaluation.  Tr. 569.

In her opinion, the ALJ gave little weight to Dr. Rask's functional assessment. Tr. 25. First, she found that Dr. Rask personally examined Plaintiff only a limited number of times before offering his opinion and thus, "did not have time to establish the normal longitudinal relationship of a treating source." Id. Second, she found that Dr. Rask's clinical notes reflected very few objective findings and those that he did include were not supportive of such a significant degree of limitation. Tr. 25-26. She noted that Dr. Rask failed to include any abnormal findings relating to Plaintiff's upper extremities, but he limited Plaintiff to less than occasional use of his arms for work-related activities. Tr. 26. Next, she found that other substantial evidence in the record failed to document objective findings supporting the degree of limitation identified by Dr. Rask. Id. Finally, the ALJ found that Plaintiff's reported activities showed a greater capacity for daily functioning than Dr. Rask's assessment. Id.

Social security law recognizes three types of physicians: (1) treating, (2) examining, and (3) nonexamining. Holohan v. Massanari, 246 F.3d 1195, 1201-02 (9th Cir. 2001); Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1996). Generally, more weight is given to the opinion of a treating physician than to the opinion of those who do not actually treat the claimant. Id.; 20 C.F.R. §§ 1527(c)(1)-(2), 416.927(c)(1)-(2).

If the treating physician's medical opinion is supported by medically acceptable diagnostic techniques and is not inconsistent with other substantial evidence in the record, the treating physician's opinion is given controlling weight. Orn v. Astrue, 495 F.3d 625, 631 (9th Cir. 2007); Holohan, 246 F.3d at 1202. If a treating physician's opinion is not given "controlling weight" because it is not "well-supported" or because it is inconsistent with other substantial evidence in the record, the ALJ must still articulate the relevant weight to be given to the opinion

under the factors provided for in 20 C.F.R. §§ 1527(d)(2), 416.927(d)(2).  Orn, 495 F.3d at 631.

"To reject an uncontradicted opinion of a treating or examining doctor, an ALJ must state clear and convincing reasons that are supported by substantial evidence.  If a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence."  Bayliss v. Barnhart, 427 F.3d 1211, 1216 (9th Cir. 2005) (citation omitted).

Defendant asserts that the ALJ was correct in stating that Dr. Rask personally examined Plaintiff only a "limited number of times" because the record reveals four examinations over a fourteen-month period.  Nevertheless, Defendant concedes that there was a treating relationship between Plaintiff and Dr. Rask and thus, agrees that the ALJ erred in concluding that this was not such a relationship.

Plaintiff argues that the ALJ erred in rejecting Dr. Rask's functional assessment because in contrast to the ALJ's finding, the record shows that Dr. Rask observed a stiff lower back, an antalgic gait, and Plaintiff's inability to stand on his toes.  Additionally, Dr. Rask noted tenderness upon palpation to the SI joints and positive maneuvers.  Plaintiff argues that these observations support Dr. Rask's opinion and thus, the ALJ erred in finding that there were few objective findings and that the findings did not support Dr. Rask's assessed limitations.

Plaintiff makes no argument directed to the example given by the ALJ in her opinion regarding Dr. Rask's upper extremity limitations.  Defendant correctly notes that the ALJ properly found that Dr. Rask's notes include no abnormal findings related to Plaintiff's upper extremities.  There is no question that Dr. Rask's upper extremity limitations are unsupported by his treatment record.

20 - OPINION & ORDER

As to the back, hip, and gait observations, the Ninth Circuit has affirmed an ALJ's rejection of a physician's functional limitation which was based on testing within the claimant's control when the ALJ is otherwise justified in rejecting the claimant's credibility as to subjective complaints. Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th Cir. 2001). Here, while Dr. Rask's observations are relevant, they are based on testing within Plaintiff's control. Because I conclude that the ALJ did not err in finding Plaintiff's subjective complaints not credible, it was not error for the ALJ to discount the significance of Dr. Rask's observations. Thus, the ALJ did not err in finding that Dr. Rask's clinical notes reflected few, if any, truly objective findings, and thus the notes did not support his functional assessment.

Next, Plaintiff argues that contrary to the ALJ's findings, there is substantial evidence in the record supporting Dr. Rask's functional assessment and therefore, the ALJ erred by concluding that other substantial evidence in the record failed to document objective findings supportive of Dr. Rask's limitations. Plaintiff first points to evidence in the record from 2010 and 2011 regarding symptoms in his hands and fingers. But, as Defendant notes, Plaintiff underwent bilateral carpal tunnel release surgery and trigger finger release surgery on his left finger, in January 2011. Tr. 499-500. The record shows that the surgery was successful. E.g., Tr. 506 (July 18, 2012 Report from Dr. Lewis noting that Plaintiff's carpal tunnel and trigger finger surgeries had "good results" although Plaintiff had "some right ulnar neuritis at present."). Based on the record, the ALJ noted that after the surgery, Plaintiff did not report any subjective complaints in relation to carpal tunnel or trigger finger symptoms, other than the note by Dr. Lewis. Tr. 19. As a result, the ALJ found the carpal tunnel syndrome to be a nonsevere impairment. Id. Plaintiff makes no objection to that finding.

Plaintiff's reliance on nerve conduction studies and examination findings which precede his surgeries does not show that the ALJ erred on this issue. Dr. Rask began seeing Plaintiff only after Plaintiff's successful carpal tunnel and trigger finger release surgeries. Thus, the ALJ was correct in noting a lack of other substantial evidence in the record to support Dr. Rask's hand, wrist, and arm limitations.

Plaintiff also points to an April 2012 observation by emergency room physician Dr. Charles Ross, D.O., that Plaintiff had positive straight-leg tests at about 30 degrees. Tr. 539. Plaintiff further cites to a May 2012 lumbar CT scan showing a "grade 1 anterolisthesis of L5 upon S1" with advanced degenerative diskogenic changes at that level and moderate degenerative diskogenic changes at L4-L5. Tr. 535. Plaintiff also cites to Dr. Lewis's July 2012 observations of tenderness in the bilateral sciatic notch, decreased dorsolumbar range of motion with extension, flexion, and bending, and decreased deep tendon reflexes bilaterally. Tr. 504-06. Dr. Lewis concluded that the physical findings of the lumbar spine were valid. Tr. 506.

Plaintiff argues that these records are consistent with Dr. Rask's opinion and thus, the ALJ erred by rejecting that opinion for lack of objective findings in the record. In response, Defendant notes that "other substantial evidence in the record" includes all of the evidence regarding Plaintiff's failed urinalyses suggesting his pain was not severe enough to require medication. Defendant further notes that even Dr. Rask indicated that Plaintiff's pain was managed well with his medications, undermining the need for such restrictive limitations. Defendant also points to conflicting evidence from August 2012 when Plaintiff had no tenderness to his back in an emergency room encounter following a motorcycle accident. Tr. 530.

22 - OPINION & ORDER

The ALJ's interpretation of the evidence was not unreasonable. The ALJ did not state that the record lacked <u>any</u> objective findings. Rather, she stated that substantial evidence in the record failed to show objective findings supporting the degree of limitation assessed by Dr. Rask. Other than self-imposed limits during testing, the only truly objective evidence in the record cited by Plaintiff is the May 2012 CT scan. And, while the radiology report indicated there were advanced and moderate degenerative changes, examining orthopedic physician Dr. Lewis referred to the CT results as showing only "some" degeneration. Tr. 477. In the context of the other evidence suggesting Plaintiff's pain was not as severe as he claimed, the single CT scan does not undermine the ALJ's reasoning that the severe restrictions assessed by Dr. Rask were unsupported by other objective evidence in the record.

Finally, Plaintiff argues that the ALJ erred in rejecting Dr. Rask's opinion as being inconsistent with his activities. Plaintiff contends that the record shows that his activities declined as his condition progressively worsened and the limited activities reported contemporaneously with Dr. Rask's opinion are consistent with the opinion of a significantly limited individual. I agree with Defendant that the record does not support that Plaintiff's activities were decreasing over time. Even into 2012, Plaintiff was lifting heavy objects and riding his motorcycle. Tr. 418 (Feb. 8, 2012 chart note by Dr. Blake noting that Plaintiff hurt his back moving heavy objects); Tr. 529 (Aug. 14, 2012 chart note by Dr. Ross noting that Plaintiff had been injured riding his motorcycle). Furthermore, as noted above in the section discussing Plaintiff's credibility, Plaintiff's activities during the period in which he claims to be disabled included performing some yard work, fishing with his grandson, and performing basic car maintenance. The ALJ did not err in finding that these activities are inconsistent with Dr. Rask's

23 - OPINION & ORDER

functional limitations.

The ALJ provided specific and legitimate reasons for rejecting Dr. Rask's functional

limitations.  The reasons were supported by substantial evidence in the record.  The ALJ did not

err.

CONCLUSION

The Commissioner's decision is affirmed.

IT IS SO ORDERED.

Dated this _____ day of _____, 2016


Marco A. Hernandez
United States District Judge